1
2
3
4
5
6
7
8
9
10
11
12

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

13

14

RONALD DENSMORE,
*individually and on behalf of all others similarly situated*,

15                                        Plaintiffs,

16

17          v.

18   MISSION LINEN SUPPLY, *et al.*,

19                                        Defendants.

20

Case No. 1:15-CV-01873-LJO-SKO

MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS

(Docs. 6, 7)

21          On October 13, 2015, Plaintiff Ronald Densmore commenced this action, individually and on

22   behalf of similarly situated individuals, against his former employer Mission Linen Supply

23   ("Mission") and Does 1-20, inclusive, in Fresno County Superior Court. Doc. 2, Ex. 1 ("Compl.").

24   Densmore's Complaint, containing nine causes of action, alleges that Defendants violated provisions

25   of the California Labor Code and Business and Professions Code. *Id.*

26          Mission removed the action to this Court on December 11, 2015, asserting federal question

27   jurisdiction under 28 U.S.C. § 1331. Doc. 2. Now before the Court is Mission's Motion to Dismiss

28   (Doc. 6), arguing that eight of the causes of actions in the Complaint fail to state a claim upon which

relief can be granted, and Densmore's Motion to Remand  this action to state court (Doc. 7). The parties have filed timely oppositions (Docs. 9, 10) and replies (Doc. 11, 13) in connection with the pending Motions.

The matters are appropriate for resolution without oral argument. *See* Local Rule 230(g). Having reviewed the record and the parties' briefing in light of the relevant law, the Court will GRANT Densmore's Motion to Remand and DENY AS MOOT Mission's Motion to Dismiss for the reasons set forth below.

### FACTUAL AND PROCEDURAL BACKGROUND

Densmore was employed by Mission, a retailer who sells linens, uniforms and related products to various companies, as commercial truck driver from 2011 to July 29, 2015. Compl. ¶ 16; Doc. 6-1, at 1. Densmore, a non-exempt employee, typically worked for Mission at least eight hours per day, five days per week, until his termination. Compl. ¶ 17. Densmore's Complaint alleges that he and the other class members would work more than eight hours in one day, more than forty hours in one week, and would not receive the requisite compensation for the overtime hours they worked. *Id.* ¶ 18. The Complaint alleges that Mission failed to provide Densmore and the other class members with the requisite thirty-minute meal breaks, that Mission would nevertheless "clock [Densmore] out" for a meal break when Densmore did not actually take a meal break, that Mission deducted meal breaks from Densmore's shifts, and failed to provide ten-minute rest breaks. *Id.* ¶ 19. Moreover, the Complaint alleges that Densmore and the class members were not paid the wages they earned upon termination of their employment, including their overtime work. *Id.* ¶ 20. Specifically, the Complaint sets forth the following causes of action in violation of California labor laws: (1) failure to pay overtime wages, in violation of section 510 of the California Labor Code ("CLC"); (2) failure to pay all wages earned on each regular pay period, in violation of CLC § 204; (3) failure to provide meal periods, in violation of CLC §§ 226.7 and 512 and the applicable Wage Order[1]; (4) failure to provide rest periods, in violation of CLC §§ 226.7 and 512 and the applicable Wage Order; (5) failure to furnish accurate wage statements, in violation

---

[1] While not explicitly explained in the Complaint, the Court understands the "Wage Order" to refer to 8 C.C.R. § 11010, promulgated by the California Industrial Welfare Commission, which codifies the various requirements of working conditions in the manufacturing industry. *See Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1077-79 (9th Cir. 2005) (explaining the origin, history, and developments of California's Industrial Wage Order).

2

of CLC § 226(a); (6) failure to pay earned wages upon termination or discharge, in violation of CLC §§ 201 and 202; (7) failure to maintain required records, in violation of CLC §§ 226 and 1174; (8) failure to indemnify for business expenses incurred, in violation of CLC § 2802; and (9) unfair competition, in violation of section 17200 of the California Business & Professions Code ("CBPC"). Compl. ¶¶ 32-85.

Mission, invoking federal question jurisdiction under 28 U.S.C. § 1331, removed the Complaint to this Court, arguing that state court jurisdiction over Densmore's claims is preempted by section 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185(a), which gives to federal courts original jurisdiction over actions brought for violations of a contract between an employer and a labor organization representing employees in an industry affecting commerce. Doc. 2. Mission asserts that at all times relevant to this action, it was and is an employer employing employees in an industry affecting commerce as defined by the LMRA, 29 U.S.C. § 141, *et seq.*, and at all times relevant to this action during which Densmore was employed by Mission, he was represented by a labor organization ("Union") and employed pursuant to collective bargaining agreements ("CBAs"). *Id.*, at 3.

On December 18, 2015, Mission moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) eight of the nine causes of action contained in the Complaint. Doc. 6. Mission contends that: (1) the existence of CBAs governing Densmore's employment with Mission exempts Mission from the CLC's statutory requirements upon which the first, second, third, and fourth causes of action in the Complaint are based; (2) the fifth, sixth and seventh causes of action must fail because they are derivative of the first four causes of action, and (3) because the ninth cause of action depends upon the first seven causes of action, it must also fail. *Id.*, at 4-6. Densmore opposes the Motion to Dismiss, arguing that Mission has not demonstrated that any CBA applied to him specifically, and that even if the CBAs apply, they fail to exempt Mission from provisions of the CLC that form the bases of the causes of action in the Complaint. Doc. 9, at 3-6. Densmore further argues that the remaining causes of action are rooted in independent requirements under California law. *Id.*, at 7-8.

On December 29, 2015, Densmore moved to remand this action to state court, arguing that removal to federal court was improper because the causes of action in the Complaint are not preempted by LMRA § 301, as they do not require interpretation of any CBA for their resolution, and involve "non-negotiable rights conferred onto Plaintiff as a matter of state law." Doc. 7, at 4-6. Densmore moreover seeks attorney's fees pursuant to 28 U.S.C. § 1447(c). *Id.*, at 6-7. Mission opposes the Motion to Remand on the same grounds cited in its Motion to Dismiss regarding the preemptive effect of § 301 in this case. Doc. 10, at 9-16.

At this juncture, the Court notes that the adjudication of both Mission's Motion to Dismiss and Densmore's Motion to Remand turn upon (1) whether any CBAs governed during the period Densmore was employed by Mission; and (2) whether under LMRA § 301, the CBAs preempt all causes of action in the Complaint. If even one of the causes of action was preempted pursuant to § 301, the Court would deny Densmore's Motion to Remand, as "the other issues raised by the Complaint would come within the supplemental jurisdiction of this Court even if only tangentially involved with the CBA." *Buck v. Cemex*, No. 1:13-cv-00701-LJO-MJS, 2013 WL 4648579, *6 (E.D. Cal. Aug. 29, 2013). However, if § 301 preemption does not apply in any of the claims, the Court must remand this case to state court and deny as moot Mission's Motion to Dismiss. *Sanchez v. Calportland Co.*, No. 2:15-cv-07121-CAS-SHx, 2015 WL 6513640, *5 (C.D. Cal. Oct. 26, 2015).

**LEGAL STANDARD**

Section 301 of the LMRA ("§ 301"), codified at 29 U.S.C. § 185(a), states in relevant part:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce … may be brought in any district court of the United States having jurisdiction of the parties …"

The Supreme Court has noted that the LMRA "does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way." *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456-57 (1957); *see also Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103-04

4

(1962) ("The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute"). As a result, because "[a]n action arising under § 301 is controlled by federal substantive law even though it is brought in state court," the Supreme Court has deemed it proper for such cases to be removed to federal court under federal question jurisdiction. *Avco Corp. v. Aero Lodge No. 375, Intern. Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 560 (1968).

Section 301 preemption subsequently expanded "beyond cases specifically alleging contract violation to those whose resolution is 'substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.'" *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (en banc) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985)). "The preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983). "Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Id.*

Nevertheless, "not every dispute concerning employment, or tangentially involving a provision of a [CBA], is preempted by § 301 or other provisions of the federal labor law." *Allis-Chalmers*, 471 U.S. at 211. In *Caterpillar, Inc. v. Williams*, the Supreme Court clarified that § 301 preemption applies only to "claims founded directly on rights created by collective-bargaining agreements, and claims 'substantially dependent on analysis of a collective-bargaining agreement.'" 482 U.S. 386, 394 (1987) (quoting *Franchise Tax Bd.*, 463 U.S. at 23). *Caterpillar* also explicitly rejected the argument that "all employment-related matters involving unionized employees be resolved through collective bargaining and thus be governed by a federal common law created by § 301." *Id.* at 396 n.10 (internal citations omitted). In other words, a defendant cannot invoke § 301 preemption merely by "alleging a hypothetical connection between the claim and the terms of the CBA or a "creative linkage between the subject matter of the claim and the wording of a CBA provision." *Cramer*, 255 F.3d at 691-92. "[R]ather, the proffered interpretation argument must reach a reasonable level of credibility." *Id.* at 692.

In *Burnside v. Kiewit Pacific Corp.*, the Ninth Circuit set forth a two-part test for determining whether a claim is preempted by § 301 based upon the Supreme Court's guidance on the issue. 491 F.3d 1053, 1060 (9th Cir. 2007). First, a court must "determine whether a particular right inheres in state law or, is instead grounded in a CBA" by considering "the *legal* character of a claim, as 'independent' of rights under the collective-bargaining agreement [and] not whether a grievance arising from 'precisely the same set of facts' could be pursued." *Id.* (emphasis in original) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). The *Burnside* panel, citing *Caterpillar*, clarified that a defense relying on the terms in a CBA is "not enough 'inject[] a federal question into an action that asserts what is plainly a state-law claim." *Id*. at 1053 (quoting 482 U.S. at 398-99) (explaining that "the plaintiff is the master of the complaint," and that if the defendant could engineer "the forum in which the claim shall be litigated" based on the substance of his defense, "the plaintiff would be master of nothing"); *see also Cramer*, 255 F.3d at 691 (noting that the plaintiff's claim itself is the 'touchstone' for preemption analysis). "If the right exists solely as a result of the CBA, then the claim is preempted, and [] analysis ends there." *Burnside*, 491 F.3d at 1059.

Next, if the claim exists independently from the CBA, the court must still decide whether it is "'substantially dependent' on the terms of a CBA" by determining "whether the claim can be resolved by 'looking to' versus interpreting the CBA." *Id.* at 1060 (citing *Caterpillar*, 482 U.S. at 394 and *Livadas*, 512 U.S. at 125). If the claim requires interpretation of the CBA, the claim is preempted; if the claim merely requires "looking to" the CBA, it is not preempted. *Id.* Although the "'look to'/'interpret' distinction" is often difficult to draw, *see id.*, "when the meaning of the contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require that the claim be extinguished." *Livadas*, 512 U.S. at 124. "'[Section] 301 does not permit parties to waive, in a collective-bargaining agreement, nonnegotiable state rights' conferred on individual employees." *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1076 (9th Cir. 2005) (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1111 (9th Cir. 2000)). "In particular, the [Supreme Court] has sought to preserve state authority in areas involving minimum labor standards." *Id.* "Thus, in

order for complete preemption to apply, 'the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Id.* (quoting *Cramer*, 255 F.3d at 691); *see also Vasserman v. Henry Mayo Newhall Memorial Hosp.*, 65 F. Supp. 3d 932, 951 (C.D. Cal. 2014) ("[A] state law claim will be preempted if it is so 'inextricably intertwined' with the terms of a labor contract that its resolution will require judicial interpretation of those terms.") (citing *Allis-Chalmers*, 417 U.S. at 213).

## DISCUSSION

### I.    Request for Judicial Notice

In conjunction with its Motion to Dismiss, Mission requests that the Court take judicial notice of (1) the CBAs it claims were in effect while Densmore was employed by Mission; and (2) a separate wrongful-termination complaint, Case No. 15 CECG 03251, filed by Densmore against Mission in state court that provides additional relevant factual context. *See* Doc. 6-2 (Request for Judicial Notice), Ex. 1 (wrongful-termination complaint), Ex. 2 (CBA in effect from 2006-2012), Ex. 3 (CBA in effect from 2006-2014), Ex. 4 (CBA in effect from 2015-2018). Because the Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue," the Court grants Mission's request as to the separate wrongful-termination complaint. *See United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). Moreover, the Court "may take judicial notice of a CBA in evaluating a motion to dismiss .... [as] such documents properly are considered [] materials 'not subject to reasonable dispute' because they are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Jones v. AT&T*, No. C 07-3888 JF, 2008 WL 902292, *2 (N.D. Cal. Mar. 31, 2008). Therefore, the Court also grants Mission's request with respect to the three CBAs. *See id.*

### II.    Applicability of the CBAs to Densmore's Employment with Mission

Densmore argues that Mission has failed to provide evidence that "any purported CBA" applied to him during the relevant time periods. Doc. 13, at 8. However, upon review of the record and the CBAs themselves, the Court finds that Densmore was in fact "covered" by the CBAs for

7

the entirety of his employment with Mission. In its Notice of Removal (Doc. 2), Mission included the sworn declaration of Steve Kulchin, its Vice President of Human Resources who has worked in his position for over fifteen years (Doc. 2-2).[2] Mr. Kulchin attests that as part of his official duties, he has access to, and is familiar with business records, data, and other information related to Mission's employment of employees represented by various labor organizations. Doc. 2-2 ¶ 2. Based on Mr. Kulchin's review of business records maintained by Mission in the ordinary course of business, Mr. Kulchin attests that Densmore "was at all times relevant to this action, represented by a labor organization and employed pursuant to one of three collective-bargaining agreements between Mission Linen Supply and such labor organizations." *Id.* ¶ 3. The first CBA became effective October 1, 2006 and would "remain in full force and effect until September 30, 2009 and [would] continue in full force and effect from year to year thereafter unless written notice is given by either party … to terminate, modify, or amend said Agreement." Doc. 6-2, Ex. 2, at 49[3]. On July 2, 2012, Mission and the Union signed an agreement extending the CBA through September 30, 2012. *Id.*, at 53. The second CBA, effective beginning on October 1, 2006, contains a clause identical to the first that extends its effect from year to year until written notice is given by either party. *Id.*, Ex. 3, at 83. The third CBA was entered into on January 1, 2015, and will continue in effect until 2018. *Id.*, Ex. 4, at 89, 115. According to Mr. Kulchin's declaration, the third CBA contained a renegotiation that effectively ended the second CBA in 2014. Doc. 2-2 ¶ 5.

       Densmore argues that none of the CBAs apply to him because he did not personally sign any of them. Doc. 13, at 9. However, Densmore has offered no evidence, other than the conclusory statements in his Motion, to rebut or discredit the sworn declaration of Mr. Kulchin as to the applicability of the CBAs to Densmore's employment with Mission. *See I.N.S. v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984) (granting no evidentiary weight to counsel's "unsupported assertions in [a] brief"). Additionally, having reviewed the entire record in this case, including Densmore's

---

[2] Where a motion to dismiss raises "the issue of complete preemption, and because compete preemption often applies to complaints drawn to evade federal jurisdiction, the court may look beyond the face of the complaint to determine whether the claims alleged as state law causes of action in fact are necessarily federal claims." *Hall v. Live Nation Worldwide Inc.*, --- F. Supp. 3d ---, 2015 WL 7069290, *2-3 (C.D. Cal. 2015) (internal citations omitted); *Vasserman*, 65 F.Supp.3d at 941 ("A court can consider evidence in deciding a remand motion, including documents that can be judicially noticed.").

[3] The CBAs are attached as exhibits to Mission's Request for Judicial Notice (Doc. 6-2), which spans 118 pages in its entirety. For ease of reference, and because the filing contains multiple, separately-paginated documents, this Order cites to the page numbers of the compiled PDF as a whole.

separate wrongful-termination complaint, the Court finds that the information therein supports Mission's assertion that Densmore was covered by the CBAs at all times throughout the duration of his employment with Mission. In Densmore's wrongful-termination complaint, which provides details about his specific duties with Mission, Densmore alleges that he worked for Mission as a truck driver to perform deliveries and sales tasks "in or around Fresno, California," and that Mission's "obligations under California Employment Law and Regulations were breached principally in Fresno County." Doc. 6-2, Ex. 1, ¶¶ 5, 8. According to each of the CBAs, they "shall apply to all Employees of the Employer who handle or work from automotive equipment for the purpose of making pick-ups, deliveries, service calls, solicitations, or sales on behalf of the Employer at any plant or branch from which said Employer may conduct business within the present jurisdiction of the local's signatory to the Regional [or Industrial Laundry] Agreement." *Id.*, Ex. 2, at 27; Ex. 3, at 58; Ex. 4, at 89. The Court further notes that all three of the CBAs apply to the Fresno branches of Mission. *Id.*, Ex. 2, at 52; Ex. 3, at 84; Ex. 4, at 116. For these reasons, the Court determines that Densmore was subject to the three CBAs during his period of employment with Mission. *See Hall v. Live Nation Worldwide, Inc.*, ___ F. Supp. 3d ____, No. CV 15-05609 MMM (PJWx), 2015 WL 7069290, *5 (C.D. Cal. 2015) (noting that CBAs "are interpreted according to ordinary contract principles" and that "[i]f the contractual language is clear and explicit, it governs").

**III.   Whether § 301 Preempts Any Cause of Action in Densmore's Complaint**

The Court now applies the two-part test articulated in *Burnside* to each of the causes of action set forth in Densmore's Complaint. *See Sanchez*, 2015 WL6513640 at *2.

A.   Failure to Pay Overtime Wages

Densmore alleges that he and the other class members were employees covered by CLC § 510, which entitles workers to overtime wages payable at the rate of at least one and one-half times their regular rate of pay for all work in excess of eight hours in one work day or in excess of forty hours in one work week. Compl. ¶¶ 33, 34. Specifically, Densmore alleges that Mission "would simply short-change [him] and Class members and not pay them for all hours worked, typically shorting [him] approximately four to six hours a week." *Id.* ¶ 35. He further alleges that

Mission would automatically deduct thirty-two minute meal-breaks from his pay, when such breaks were not taken, and that Mission would do this two times for class members working more than ten hours in one shift. *Id.*

Mission's sole argument that § 301 preempts this claim rests upon the statutory exemption set forth in CLC § 514. Doc. 6-1, at 10-11. Under CLC § 514, the protections of CLC § 510 regarding overtime pay do not apply to an employee with a valid CBA if the CBA "expressly provides for wages, hours of work, and working conditions of the employees, and … provides premium wage rates for all overtime hours worked. The CBA must also provide "a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." CLC § 514.

Courts considering whether a CBA falls within the statutory exemption of CLC § 514 have come to different conclusions based upon the terms of the CBA and whether such terms are clear or in need of interpretation. In *Coria v. Recology, Inc.*, the court held that § 301 preempted the plaintiff's CLC § 510 overtime claims simply because deciding whether or not the CBA fell under CLC § 514 required interpreting provisions of that particular CBA. 63 F. Supp. 3d 1093, 1098-1100 (N.D. Cal. 2014). *Coria* found that the issues raised by the plaintiff with regard to how meal breaks and rest periods were to be treated in terms of his compensation were "directly addressed by and dependent upon the same 'Coffee Break' provision of [the plaintiff's CBA.]" *Id.* at 1099. Similarly, in *Raphael v. Tesoro Refining and Marketing Co., LLC,* the court found that the defendant, by "affirmatively present[ing] the Court with a plethora of provisions in need of interpretation throughout the eight separate CBAs covering Raphael and the aggrieved employees he [sought] to represent," demonstrated that it would be necessary for "[a]dditional interpretation" to resolve the defendant's assertion that the exemption in CLC § 514 would apply to Raphael, and that Raphael's CLC § 510 claim was therefore preempted under § 301. No. 2:15-cv-02862-ODW (Ex), 2015 WL 3970293, *6-7 (C.D. Cal. June 30, 2015)

However, in *Vasserman*, which provides the most thorough analysis on the issue, the court noted that "the fact that the [CLC] § 514 exemption may apply does not alter the substance of Vasserman's claim … although Vasserman's claim may ultimately fail, the court is unable to

10

conclude that its resolution is substantially dependent on analysis of the CBAs when the supporting allegations focus only on state law." 65 F. Supp. 3d at 954. Moreover, *Vasserman* notes that where an employer's "reliance on [CLC] § 514 is essentially a defense" to CLC § 510 overtime claim, this cannot give rise to § 301 preemption. *Id.*; *see also Balcorta*, 208 F.3d at 1106 ("It is settled law that a case may not be removed to federal court on the basis of a federal defense, including a defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue") (internal citation omitted). *Vasserman* cites cases reasoning that the defensive use of the CBA would not necessarily support removal of the case to federal court, but would mean instead that the defendant could prevail in state court. *Id.* at 955-58 (citing *Morales v. Amcor Packaging (USA), Inc.*, No. 2:14-cv-02612-ODW (AJW), 2014 WL 2931174, *4 (C.D. Cal. June 30, 2014), *Placencia v. Amcor Packaging Distrib., Inc.*, No. SACV 14-0379 AG (JPRx), 2014 WL 2445957, *2 (C.D. Cal. May 12, 2014)). Thus, because Vasserman did not "dispute the applicable wage rates provided in the CBA," but instead argued that "she was not paid overtime as required by California law," the court found that interpretation of the CBAs was not necessary, as resolving Vasserman's claim merely requires "reference to the [CBA]'s undisputed terms" and interpretation and application of state law. 65 F. Supp. 3d at 958-59.

Likewise, in *Castillo v. Long Beach Mem'l Med. Ctr.*, the court found that because the parties' dispute did not concern how premium wage rates were calculated under the CBA, but rather centered on whether the overtime rates described in the CBA satisfied state law, interpretation of the CBA was not required. ___F. Supp. 3d___, 2015 WL 5554007, *4-5 (C.D. Cal. 2015) (distinguishing the case from *Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063 (9th Cir. 2000), where the Ninth Circuit found that the parties' dispute constituted a disagreement about the meaning of the terms in the CBA). Finally, in *Sanchez*, the court pointed out that the CLC § 514 exemption does not "change the *nature* of plaintiff's state-law claims," and that the plaintiff's CLC § 510 claim was therefore not preempted under the first prong of *Burnside*. 2015 WL 6513640 at *3-4 (emphasis in original). Moreover, because the terms of the CBA were clear, no

11

"interpretation" was required of the CBA at issue, § 310 did not preempt the plaintiff's claims under the second prong of *Burnside*. *Id.* at *4.

Upon review of the CBAs in this case, the Court finds that Densmore's CLC § 510 claim is more akin to those presented in *Vasserman*, *Castillo*, and *Sanchez*, rather than those in *Coria* and *Raphael*, because (1) Mission's only argument for preemption rests upon CLC § 514; and (2) unlike *Coria* and *Raphael*, there is no clear dispute in the terms of the CBAs between Densmore and Mission. Moreover, the Court finds more persuasive the reasoning in *Vasserman*, *Castillo*, and *Sanchez* that even if a CBA satisfies the requirements for statutory exemption under CLC § 514, this alone does not mandate preemption under § 310 because CLC § 514 is an affirmative defense, the mere invocation of which does not demonstrate that a CLC § 510 claim cannot exist outside of the CBA.[4] *See Cramer*, 255 F.3d at 691. Here, Densmore's CLC § 510 claim "is plainly based on state law," and § 310 preemption "is not mandated simply because the defendant refers to the CBA in mounting a defense." *See Cramer*, 255 F.3d at 691. Mission's reference to the CBAs as an affirmative defense is insufficient to demonstrate that Densmore's CLC § 510 claim is not independently conferred upon him by state law. *Id.* The claim therefore survives the first part of *Burnside*'s test. 491 F.3d at 1059. As a result, the Court rejects Mission's argument that CLC § 514 automatically renders Densmore's CLC § 510 claim preempted under § 301. *See id.*

Turning now to the second part of *Burnside*, the Court finds that the resolving Densmore's CLC § 510 claim does not "substantially depend" upon analyzing any of the CBAs. *See* 491 F.3d at 1059-60. As noted by *Raphael*, the difference between whether or not § 310 will preempt a CLC § 510 claim depends upon whether the terms of the CBA are clear or in dispute. *See* 2015 WL 3970293, at *6. The provisions in the three CBAs relevant to Densmore's CLC § 510 claim are clear and do not require interpretation. Article 25 of the 2006-2012 CBA clearly provides for a forty-hour workweek, and states that"[a]ll time worked in excess of forty (40) hours in any one week shall be overtime and shall be paid for at time and one-half (1-1/2) their regular rate of compensation. Doc. 6-2, Ex. 2, at 40. Article 7 of the 2006-2014 CBA likewise provides for a forty-

---

[4] As a result, the Court disagrees with *Hall*, which found § 301 preemption simply by virtue of the applicable CBA satisfying the requirements of CLC § 514 because the CBA established an alternate workweek, and provided for wages, hours of work, working conditions, and an overtime pay rate beyond 1.3 times the state minimum wage. *See* 2015 WL 7069290, at *11.

hour work week and states that "all time worked in excess of forty (40) hours in a week shall be paid at the overtime rate of time and one-half (1-1/2) their contractual hourly rate." *Id.*, Ex. 3, at 64. Article 7 of the 2015-2018 CBA contains a provision identical to Article 7 in the 2006-2014 CBA. *Id.*, Ex. 4, at 96. Unlike the defendant in *Raphael*, who "affirmatively presented … a plethora of provisions in need of interpretation," Mission has not pointed out any dispute in the terms of the CBAs that require this Court's interpretation on Densmore's CLC § 510 claim.[5] *See* 2015 WL 3970293 at *6 (finding § 301 preemption where the defendant "describe[d] the complexity involved in calculating the proper wage and premium rates under only a single CBA, highlighting essential terms that [would] need to be interpreted in order determine if the statutory exemptions apply," and which would "become[] increasingly muddied as the seven other CBAs at issue come into play"). Therefore, as the overtime provisions in the applicable CBAs here do not require interpretation, the Court finds that Densmore's CLC § 510 claim is not preempted by § 310. *Vasserman*, 65 F .Supp. 3d at 960.

   B.   Failure to Pay All Wages Earned on Regular Pay Period

   Densmore's second cause of action alleges that Mission violated his rights under CLC § 204, which entitles workers to receive all wages earned for the pay period corresponding to the payday. Compl. ¶ 40. Specifically, Densmore alleges that Mission failed to pay him and other class members "all wages earned each pay period on the regular payday for the pay period, including but not limited to overtime wages and time automatically deducted for meal breaks that were not taken." *Id.* ¶ 41.

   The Court has reviewed the three CBAs in their entirety and did not find any provision contained therein that could pertain to this cause of action. CLC § 204 provides that all wages

---

[5] The Court notes that the first two CBAs contain a grievance procedure provision stating that any dispute involving wage rates, overtime or other matters involving the pay of Employees must be filed in writing within thirty (30) days of the  act or omission which is grieved and retroactive compensation shall be limited to three (3) months preceding the date of filing. Doc. 6-2, Ex. 2, at 45; Ex. 3, at 73. The third CBA contains a more general grievance procedure. *Id.*, Ex. 4, at 104. While not argued by Mission in this case, the Court nevertheless finds that although the CBA's grievance procedures could be consulted in resolving Densmore's CLC § 510, like the statutory exemption of CLC § 514, these grievance provisions cannot alone mandate § 301 preemption. *See Meyer v. Irwin Indus., Inc.*, 723 F. Supp. 2d 1237, 1246-47 (C.D. Cal. 2010) ("[B]ecause the CBA relates only to Defendant's asserted defenses, and does not clearly or unmistakably interpret Plaintiff's state law claims or require arbitration of Plaintiff's state law claims, there is no § 301 preemption and removal is improper."); *see also Vasserman*, 65 F. Supp. 3d at 964 ("When a CBA's grievance and arbitration procedure does not directly reference the statutes at issue, courts have concluded that the agreement does not contain a 'clear and unmistakable  waiver' of an employee's right to a judicial forum.").

13

"earned by any person in any employment are due and payable twice during the calendar month, on days designated in advance by the employer as the regular paydays." None of the CBAs contain any language about regular paydays. Moreover, Mission has made no specific argument as to this cause of action, aside from its contention that this claim is derivative of the first and third causes of action, and that the Court may therefore exercise supplemental jurisdiction so long as § 301 preemption applies in at least one of Densmore's claims. Doc. 6, at 4; Doc. 6-1, at 12; Doc. 10, at 21. Therefore, as Densmore's CLC § 204 cause of action "inheres" in state law and has no basis in any of the CBAs, the Court finds that § 301 preemption does not apply to this cause of action. *Burnside*, 491 F.3d at 1060.

### C. Failure to Provide Meal Periods

Densmore's third cause of action alleges that Mission failed provide meal periods to him and other class members, in accordance with CLC §§ 226.7, 512, and the applicable Wage Order, including the failure to provide meal breaks prior to the fifth hour of work, and the failure to provide a second meal break when an employee worked more than ten hours. Compl. ¶ 48. In connection with this cause of action, Densmore alleges that Mission failed to pay him and the other class members the additional hours of pay for the said meal-period violations, and that Mission would frequently clock him and the other class members out for meal breaks and automatically deduct thirty-two minutes from each employee's pay check for each meal break that would have otherwise been required, even though the employees did not actually take these breaks. *Id.* ¶¶ 49-50.

CLC § 226.7 requires that employers shall not require an employee to work during a meal or rest or recovery period mandated pursuant to any applicable law. It defines "recovery period" as "a cooldown period afforded an employee to prevent heat illness." CLC § 226.7(a). CLC § 512 provides, in relevant part, that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes," and "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may

14

be waived by mutual consent of the employer and the employee only if the first meal period was not waived."

Like CLC § 510, CLC § 512 has a statutory exemption. The exemption, described in CLC §§ 512(e) and (f)(2), provides that CLC § 512 does not apply to a commercial driver[6] covered by a valid CBA that expressly provides for (1) the wages, hours of work, and working conditions of employees; (2) for meal periods for those employees; (3) final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked; and (4) a regular hourly rate of pay of not less than 30 percent more than the state minimum wage.

In its filings, Mission provides a detailed list of the articles in the three CBAs that relate to the requirements listed in CLC § 512. Doc. 6-2, at 13-14; Doc 10, at 9-13. Mission then argues that because the CBAs fall within the CLC § 512(e) exemption, Densmore's meal-period cause of action is based on the CBAs, and is therefore preempted by § 301 under the first prong of *Burnside*. *Id.* at 13. However, for the same reasons discussed in relation to Densmore's CLC § 510 claim, the Court is unpersuaded by Mission's argument. Indeed, as *Vasserman* notes, "[m]eal periods are a non-negotiable right under state law," and "[c]ourts have thus held that California state law claims are not preempted even where the CBA includes language entitling employees to such breaks." 65 F. Supp. 3d at 960 (citing *Valles*, 410 F.3d at 1092, *Roth v. CHA Hollywood Med. Ctr., L.P.*, No. 2:12-cv-07559-ODW (SHx), 2013 WL 5775126, *3 (C.D. Cal. Oct. 25, 2013), *Meyer v. Irwin Indus., Inc.*, 723 F. Supp. 2d 1237, 1244 (C.D. Cal. 2010). Thus, the defensive invocation of CLC § 512(e)'s exemption is not enough to demonstrate that the rights set forth in Densmore's CLC § 512 claim will fail the first prong of *Burnside*'s test. *See Sanchez*, 2015 WL 6513640 at *3-4. Even *Raphael*, which ultimately found the employee's CLC § 512 claim preempted, conceded that relying on a statutory exemption "cannot suffice as the sole basis for preemption and removal." *See* 2015 WL 39790293 at *5. Therefore, as Densmore's CLC § 512 claim arises under state law and is

---

[6] "Commercial driver" is defined in CLC § 512(g)(1) as "an employee who operates a vehicle described in Section 260 or 462 of, subdivision (b) of section 15210, of the Vehicle Code." As Densmore's separate wrongful-termination complaint identifies him as a truck driver (Doc. 6-2, Ex. 1, at 7 ¶ 8), Densmore is a "commercial driver" for purposes of this analysis.

independent of the CBAs, it survives the first prong of *Burnside*. *Vasserman*, 65 F. Supp. 3d at 960-61.

Mission additionally contends that resolving Densmore's CLC § 512 cause of action requires that the Court determine what obligations the CBAs imposed on it—a task Mission claims "is substantially dependent on and inextricably intertwined with the governing CBA." Doc. 10 at 19- 20. In other words, Mission argues that this cause of action fails the second prong of *Burnside*. *See id.* Mission cites cases[7] that found the employees' respective CLC § 512 claims preempted because they required interpretation of the CBAs: *Raphael*, 2015 WL 3970293, *Coria*, 63 F. Supp. 3d 1093, and *Buck*, 2013 WL 4648569. However, upon review of these cases, the Court finds them inapplicable to the scenario presented here. First, because *Coria*'s analysis was focused only on the interplay of CLC §§ 512 and 512(e) in the context of the first prong of *Burnside*, *Coria* does not speak to how CLC § 512(e) might require the interpretation of a CBA in this case, where the Court has already determined that Densmore's meal-period claim <u>does not</u> "exist[] solely as a result of the CBA." *See* 63 F. Supp. 3d at 1098 (quoting *Burnside*, 491 F.3d at 1059). Next, the courts in *Raphael* and *Buck* pointed out specific disputes in their respective CBAs that required interpretation, which meant that under the second prong of *Burnside*, the CLC § 512 claims were preempted by § 301. *Raphael*, 2015 WL 3907293 at *6-7 (finding a "clear dispute between the parties as to the interpretation and application of the CBAs' arbitration provisions"); *Buck*, 2013 WL 4648579 at *6-7 ("[S]ince the CBA makes specific and rather unique provision for meal breaks for drivers, the CBA must be consulted to determine if Defendants met its obligation to Plaintiff and to similarly situated drivers with regard to meal breaks.").

Here, the Court finds that the terms of the CBA are clear and do not require interpretation. *See Sanchez*, 2015 WL 6513640 at * 4. Unlike the defendants in *Buck* and *Raphael*, Mission has failed to point out any specific provisions in the CBAs that are subject to dispute. Rather, as stated above, Mission merely lists the provisions in the CBA that could be relevant to the determination of

---

[7] Mission also cited "*Ayala v. Destination Shuttle Services LLC, et al.*, CV 13-6141 GAF (PJWx), Doc. No. 18 (C.D. Cal. Nov. 1, 2013)", but did not provide an appropriate electronic citation for this case.

whether the statutory exemption of CLC §§ 512(e) and (f) could apply in this case. Doc 10, at 9-13.

The only provisions that specifically reference a meal break are as follows:

> Article 25 of the 2006-2012 CBA states:
>
> All full-time RSRs have a work week of forty (40) hours to be worked either eight (8) or ten (10) hours a day, excluding a one-half (1/2) hour lunch period, five (5) or four (4) days a week …

Doc. 6-2, Ex. 2, at 40.

> Article 7 of the 2006-2014 CBA states:
>
> For all Employees, the regular workday shall consist of eight (8) consecutive hours with an uninterrupted time out for lunch, and the regular workweek shall consist of five (5) consecutive eight (8) hour days.

Doc. 6-2, Ex. 3, at 64.

> Article 7 of the 2015-2018 CBA states:
>
> For all Employees, the regular workday shall consist of eight (8) consecutive hours with an uninterrupted time out for lunch.

Doc. 6-2, Ex. 4, at 96. Neither party has claimed any dispute with respect to these provisions, such that would require the Court to interpret their terms. *Cf. Firestone*, 219 F.3d at 1065-66 (finding § 301 preemption where the plaintiffs and defendant had different interpretations of the term "regular rate" of pay, and therefore, "one could not determine whether plaintiffs were receiving a 'premium wage rate' for overtime under the collective bargaining agreement … without interpreting that agreement to determine, *inter alia*, what a regular rate was"); *see also Avalos v. Foster Poultry Farms*, 801 F. Supp. 2d 959, 963 (E.D. Cal. 2011), affirmed upon motion for reconsideration by *Avalos v. Foster Poultry Farms*, 798 F. Supp. 2d 1156 (E.D. Cal. 2011) (no interpretation of CBA required where plaintiff's action "rests on the 'purely factual' issue of whether Defendant violated California law by not compensating Plaintiffs for all of the time worked, including donning and doffing, irrespective of the fact that section 7(H)(3) of the CBA concludes that Plaintiffs were paid").

As such, resolving Densmore's meal-period claim under CLC §§ 226.7 and 512 requires at most only consulting, rather than interpreting, the relevant CBAs. *Burnside*, 491 F.3d at 1072-73. Therefore, Densmore's third cause of action is not preempted by § 301. *See id.*

### D. <u>Failure to Provide Rest Periods</u>

Densmore's fourth cause of action alleges that Mission failed to provide rest periods at the rate of ten minutes per four hours of work, in violation of CLC §§ 226.7 and 512, and the applicable Wage Order. Compl. ¶¶ 54-56.

In its Motion to Dismiss, Mission argues that it is exempt from this requirement under CLC § 226.7(e), which provides that CLC § 226.7 "shall not apply to an employee who is exempt from meal or rest or recovery period pursuant to other state laws." Doc. 6-1, at 15. Mission's argument with regard to preemption here therefore relies upon its arguments regarding the statutory exemption in CLC § 512(e). *Id.* ("As discussed above, Plaintiff is an employee who is exempt from the 'meal period' requirements of section 512(a) and (B) by virtue of section 512(e). Thus, by its plain terms, the provisions of section 226.7 do not apply to Plaintiff"). However, here, the Court has determined that the defensive invocation of statutory exemptions was insufficient to warrant § 301 preemption with regard to both Densmore's meal-period and overtime claims. *See Cramer*, 255 F.3d at 691. That reasoning is also applicable to Densmore's rest-period claim. *See id.* Therefore the Court rejects Mission's argument that CLC § 226.7(e) inevitably subjects Densmore's rest-period claim to § 301 preemption.

As for whether Densmore's rest-period cause of action is otherwise preempted by § 301 under *Burnside*, the Court concludes that it is not. None of the three CBAs contain any sort of language that could refer to the ten-minute rest periods as alleged in Densmore's Complaint. Accordingly, the Court finds that Densmore's rest-period claim is independently rooted in state law, and as the CBAs do not mention rest periods, no interpretation of the CBAs is required here. *Burnside*, 491 F.3d at 1064 ("The right arises from state law, not from the CBA, and is vested in the employees directly, not through the medium of the CBA"). Densmore's rest-period claim is therefore not preempted by § 301. *See id.* at 1074.

E.  <u>Failure to Furnish Accurate Wage Statements; Failure to Pay Earned Wages Upon</u>

<u>Termination or Discharge; Failure to Maintain Required Records; Unfair Competition</u>

With regard to Densmore's fifth, sixth, and seventh causes of action, Mission makes the identical argument that these claims are "merely derivative of the underlying 'failure to pay' claims." Doc. 6-1, at 16-17; Doc. 10, at 21. Similarly, Mission argues that Densmore's ninth cause of action, unfair competition, is "based on conduct alleged in the first seven claims for relief," and seeks dismissal of this claim on the same basis. Doc. 6-1, at 17. Mission makes no other argument why these claims require interpretation of the CBAs and are thereby preempted by § 301.

In his Opposition, Densmore argues that his fifth, sixth, seventh, and ninth causes of action "are based on independent requirements under California law," and therefore are not preempted. Doc. 9, at 11. Upon review of these claims and the CBAs in this case, the Court agrees.

Densmore's fifth cause of action alleges that Mission either recklessly or intentionally failed to make, keep, and preserve true, accurate, and complete records of, *inter alia*, the actual number of hours worked each workday and each work week by Densmore and the other class members, the beginning and ending time of each work period, meal period and split shift interval, the total hours worked every day, and the total hours worked per pay period and applicable rates of pay. Compl. ¶ 61. Related to this claim is Densmore's seventh cause of action, which alleges that Mission failed to maintain required records as to his and the other class members' total daily hours worked, applicable rates of pay, deductions, meal periods, time records, and accurate itemized statements. *Id.* ¶ 74. The statutory basis for the fifth and seventh causes of action is CLC § 226(a), which requires that employers furnish, at a regular timeframe, to each employee "an accurate itemized statement in writing" with certain information. The three CBAs all contain the following provision[8] that could be relevant to this claim:

> The employer hereby agrees to furnish and maintain in good working order a time clock for keeping an accurate record of the time of all Employees on a daily, hourly or weekly basis. The Employer shall see that this record is kept as a permanent record from which all payroll is computed. In the event of a dispute affecting the work records, the Employer shall make available to the Union or its Business Agent, the work records in dispute to see that the

---

[8] The difference between the wording of this provision among the three CBAs is negligible.

> proper commission and wage rates are being paid in accordance with wages and commission in this Regional Industrial Laundry Agreement.

*See* Doc. 6-2, Ex. 2, at 33; Ex. 3, at 64; Ex. 4, at 96. As these terms are clear, and Mission does not suggest that interpretation of the CBAs may be required to resolve Densmore's fifth and seventh causes of action, the Court finds that this cause of action is not preempted by § 301. *Burnside*, 491 F.3d at 1074.

Densmore's sixth cause of action alleges that Mission willfully failed to pay him and the other class members who were terminated the wages earned and unpaid at the time of termination. Compl. ¶¶ 67-68. Densmore cites CLC §§ 201 and 202 as the statutory bases for this cause of action. *Id.* ¶ 66. CLC § 201 applies in the event of a discharge or layoff, and CLC § 202 applies when an employee retires. The provisions in the CBAs that pertain to the discharge, termination, or severance of an employee do not contain any reference to when employees who retire, quit, or are terminated shall receive their unpaid wages. *See* Doc. 6-2, Ex. 2, at 47; Ex.3, at 71; Ex. 4, at 103. Thus, as no interpretation of the CBAs is required to resolve this cause of action, which has an independent basis in the CLC, the Court finds that there is no § 301 preemption with regard to Densmore's sixth cause of action. *Burnside*, 491 F.3d at 1074

Densmore's ninth cause of action alleges that Mission engaged in unfair and unlawful practices in violation of CBPC § 17200 by "failing to include non-discretionary bonuses in overtime pay calculations." Compl. ¶¶ 82-83. Mission makes no specific argument as to how any CBA would need to be interpreted in connection with this claim. Moreover, given the "derivative nature" of the ninth cause of action, the Court "need not conduct a separate preemption analysis with respect to that claim." *Vasserman*, 65 F. Supp. 3d at 964; *see also Bonilla v. Starwood Hotels & Resorts Worldwide Inc.*, 407 F. Supp. 2d 1107, 1113-14 (C.D. Cal. 2005) ("When a district court remands a case to state court based on preemption analysis of the relevant wage claims, it is unnecessary to conduct an analysis of related state law claims, including claims pursuant to Section 17000 of the California Business & Professions Code."). Therefore, the Court finds that Densmore's ninth cause of action is not preempted by § 301. *Vasserman*, 65 F. Supp. 3d at 964.

//

F.   Failure to Indemnify for Expenses

Densmore's eighth cause of action alleges that Mission failed to indemnify him and the other class members for business expenses incurred during the course of their official duties, in violation of CLC § 2802. Compl. ¶¶ 77-78. Mission does not seek dismissal of this cause of action and does not explain how § 301 preemption might apply. *See* Doc. 6, at 18; Doc. 9, at 11. Thus, the Court need not address this claim. *See Gregory*, 317 F.3d at 1054 (declining to reach remaining claims where defendants failed to establish federal jurisdiction under § 301).

G.   Conclusion

The Court has determined, *supra*, that § 301 does not preempt any of the causes of action in Densmore's Complaint, as all of these claims either arise independently from state law, or do not require interpretation of the CBAs for their resolution. *Burnside*, 491 F.3d at 1074. Accordingly, Mission cannot meet its burden of establishing federal question jurisdiction under 28 U.S.C. § 1331. *See Moore-Thomas v. Alaska Airlines Inc.,* 553 F.3d 1241, 1244 (9th Cir. 2009) ("The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand"); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). Because this Court lacks subject matter jurisdiction over the instant case, Densmore's Motion to Remand is warranted. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). As the Court will grant Densmore's Motion to Remand, it necessarily denies as moot Mission's Motion to Dismiss. *Vasserman*, 65 F. Supp. 3d at 985; *Sanchez*, 2015 WL 6513640 at *5.

**IV.   Attorney's Fees**

Densmore has further requested that the Court award the fees and costs incurred by his attorneys in connection with removal of this action pursuant to 28 U.S.C. § 1447(c), which permits a party to seek attorney's fees incurred as a result of the removal. Doc. 7-1, at 9. Mission opposes the request. Doc. 10, at 21. Generally, it is a matter of the Court's discretion whether or not to award attorney's fees pursuant to § 1447(c). *Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443, 446 (9th Cir. 1992). However, "absent unusual circumstances, courts may award attorney's fees

under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).

Here, although the Court ultimately concluded that it lacked subject matter jurisdiction in this case and that Mission's removal was incorrect as a matter of law, the Court will not go so far as to find that Mission's position was not "fairly supportable." *See Balcorta*, 208 F.3d at 1106 n.6; *see also Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008) ("There is no question that [Defendant]'s arguments were losers. But removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would be awarded whenever remand is granted."). Other courts deciding this very issue have declined to award attorney's fees despite finding no preemption under the LMRA. *See, e.g.*, *Huitron v. U.S. Foods, Inc.*, No. CV 14-09402 MMM (PLAx), 2015 WL 1524398, * 15 (C.D. Cal. Mar. 2015); *Williams v. Centerplate, Inc.*, No. 14-cv-02967-VC, 2014 WL 4748320, * 2 (N.D. Cal. Sept. 24, 2014); *Rodriguez v. Pacific Steel Casting Co.*, No. 12-cv-00353 NC, 2012 WL 2000793, *6 (N.D. Cal. June 1, 2012); *Sutter Health v. UNITE HERE*, No. 2:05-cv-1081 MCE-PAN, 2005 WL 1925910, *6 (E.D. Cal. Aug. 10, 2005). Likewise, the Court DENIES Densmore's request for attorney's fees.

**CONCLUSION AND ORDER**

For these reasons, Densmore's Motion to Remand this case to Fresno County Superior Court is GRANTED, and Mission's Motion to Dismiss this case is DENIED as moot.

IT IS SO ORDERED.

Dated:   **February 20, 2016**            **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE